IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BANKERS LIFE AND CASUALTY
COMPANY,

      Plaintiff,

      v.                                      Case No. 20-cv-2488-JTM-TJJ

AMERICAN SENIOR BENEFITS, LLC, and
INTEGRITY MARKETING GROUP, LLC,

      Defendants.

## MEMORANDUM AND ORDER

Plaintiff Bankers Life brings the present action against American Senior Benefits (ASB) and Integrity Marketing Group for violation of the federal and state trade secrets laws (18 U.S.C. § 1836, K.S.A. 60-3320), breach of contract, tortious interference with contractual relationships, civil conspiracy, and declaratory judgment. (Dkt. 1). This matter is before the court on Defendants' Motion to Dismiss (Dkt. 16) the action under Fed.R.Civ.Pr. 12(b)(3). Defendants argue that venue is not proper in Kansas. Alternatively, the Defendants argue, the court should transfer the action to the Nothern District of Illinois under 28 U.S.C. § 1404(a).

*Plaintiff's Allegations*[1]

Bankers Life is an Illinois corporation which provides seniors with insurance and financial products (such as long-term care insurance, life annuities, and Medicare Supplement insurance). Bankers Life requires its employees and independent contractor agents, in exchange for their training and access to confidential information, to sign contracts with restrictive covenants. The covenants allow the workers to join competitors, but prohibit them from recruiting other Bankers Life employees and agents, and from replacing Bankers Life insurance policies, for a two-year period. The covenants also prohibit them from taking or using Bankers Life's confidential information and trade secrets.

ASB, a limited liability company organized under the laws of the State of Ohio, with its principal place of business in Olathe, Kansas, is a competitor of Bankers Life, formed in significant part by former Bankers Life employees and agents.[2] Integrity, a Delaware limited liability company with its principal place of busines in Coppell, Texas, acquired ASB in July 2019.[3] Integrity lists as Managing Partners the Co-founders of ASB,

---

[1] The court summarizes the plaintiff's allegations as set forth in the Complaint, and takes these allegations as true for purposes of defendants' motion. The defendants dispute the validity of these allegations. (Dkt. 16, at 3 n. 2).

[2] ASB bills itself as an independent marketing organization with more than 100 locations nationwide and more than 1,400 affiliated agents. Its leadership team is comprised of Clay LeGeyt (Founder, Owner, and Managing General Partner), James Sweeney (Founder, Owner, and Managing General Partner), Albert Hawks (Executive Vice President), Greg Gelineau (Executive Vice President), and Venae Jewett (Chief Operating Officer). LeGeyt, Sweeney, Hawks, and Gelineau are former Bankers Life employees.

[3] Founded in 2006, Integrity bills itself as "the nation's leading distributor of life and health insurance products focused on serving the Senior Market." Integrity has over 275,000

Jim Sweeney and Clay LeGeyt. The Complaint alleges that ASB (with Integrity's authorization) has targeted its employees and agents for hire or retention, and has encouraged them to violate their restrictive convenants.

On August 21, 2015, Bankers Life filed a lawsuit against ASB in Federal Court in Chicago, Illinois, for tortious interference with contracts and tortious interference with prospective business advantage. On October 23, 2018, the parties settled the dispute by entering into a Protocol for ASB's employment of former Bankers Life workers. For the five-year term of the Protocol, ASB agreed:

a. Before appointing or hiring any person, ASB must ask them if they are a current or former Bankers Life agent or employee;

b. If the person is a current or former Bankers Life agent or employee, within 2 years of the end of his/her employment and/or appointment, ASB must require the agent or employee to provide one week written notice to Bankers Life that they are intending to leave BLC;

c. For current Bankers Life agents/employees, ASB must require them to provide ASB a copy of the written departure notice to Bankers Life;

d. Advise the employee and/or agent in writing not to breach their Agent Agreements with Bankers Life, including, without limitation, the confidentiality, nondisclosure, customer non-solicitation and agent/employee non-recruitment provisions;

e. Advise the employee and/or agent in writing that they must not download or otherwise take any policyholder information, or any other confidential information of Bankers Life;

f. Ask them if they have in their possession any Bankers Life company information;

---

independent agents and more than 1,200 employees. Integrity was founded by Bryan Adams, Mike Wingate, and Tom Schueth, and its website identifies 72 people as Partners or Managing Partners.

  g. If the answer is yes, request that they return all such information.

  h. Ask them if they have induced or attempted to induce any Bankers Life agent/employee to curtail, resign, or sever their relationship with Bankers Life to come to ASB;

  i. If the answer is yes, terminate discussions or notify Bankers Life and enter into discussions on possible resolutions;

  j. Ask them if they have contacted or solicited any Bankers Life policyholder to request, advise, consult, influence, induce or attempt to induce the policyholder to relinquish, surrender, replace, or lapse any policy issued by Bankers Life;

  k. If the answer is yes, terminate discussions or notify Bankers Life and enter into discussions on possible resolutions;

  l. If the policyholder contacted the departing employee/agent, advise them that they still cannot assist the policyholder to relinquish, surrender, replace or lapse any policy issued by Bankers Life and that they are to tell the policyholder to contact the Bankers Life branch; and

  m. ASB must notify Bankers Life when it engages or hires a former Bankers Life agent or employee if that person has left Bankers Life within the prior 24 months and is still subject to a restrictive covenant.

(Dkt. 1, ¶ 35).

In July, 2020, ASB executive vice president Albert Hawks recruited Nicholas Derouin, a former Unit Sales Manager at Bankers Life's Rockford, Illinois office. Derouin had already decided to leave Bankers Life for a different rival agency, The Assurance Group, Inc. (TAG). Derouin then recruited ten other Rockford agents and employees of Bankers Life to join an ASB affiliate, Key Retirement Solutions, Inc.

On September 9, 2020, Bankers Life sued nine former members of the Rockford Office in *Bankers Life and Cas. Co. v. Derouin et al.*, No. 3:20-cv-50340 (N.D. Ill.), alleging that they violated their employment agreements by taking confidential information. All

of the agreements provided that venue for any disputes between the parties would be the United States District Court for the Northern District of Illinois. Bankers Life also alleged the former members misappropriated trade secrets in violation of 18 U.S.C. § 1839(3) and 765 ILCS 1065/2(d). According to the *Derouin* Complaint, "the actions at issue occurred principally in this District and the Defendants agreed the proper venue for any claim not covered by the parties' Arbitration Agreement 'shall be in a court in Cook County, Illinois or the United States District Court for the Northern District of Illinois.'"

On October, 2, 2020, Bankers Life filed the present action against ASB and Integrity. The Civil Cover Sheet submitted by Bankers Life explicitly lists *Derouin* as a related case. (Dkt. 2).

Bankers Life alleges that ASB violated the Protocol agreement in multiple ways when it failed to give the required notice. (Dkt. 1, ¶¶ 36-53). It also alleges that the recruited Rockford agents extensively misappropriated confidential and trade secret information before their departure, and that ASB's failure to give the required Protocol notices allowed this to occur.

According to the Complaint, venue in Kansas is proper in this court "under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in Kansas. Namely, Kansas is the location where ASB made the strategic decisions which led to the Protocol violations on which this Complaint is based."

As Defendants acknowledge, venue in a given District is persmissible so long as a substantial portion of the underlying events occurred there. *See Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1165 (10th Cir. 2010). They argue, however, the court

should dismiss the action under 28 U.S.C. § 1391(b)(2) because "[t]his is a case about the former agents and managers in Bankers Life's Rockford, Illinois office deciding to eventually join ASB."

Bankers Life responds that Kansas is an appropriate venue for its breach of contract, tortious inteference, and declaratory judgment claims because whether through action or inaction ASB caused the Protocol to be violated. Thus, it contends that "ASB employees in Kansas *likely* helped onboard employees and agents in Illinois and Minnesota," and that it is "also *likely* that ASB employees in Kansas executed the steps necessary to send transition money to Kit Curry and Nick Derouin after Jim Sweeney approved the payment." (Dkt. 19, at 6) (emphasis added). Plaintiff also allege in their Response that ASB's actions were the product of a "corporate strategy" to violate its obligations under the Protocol. (*Id*. at 1).

However, the court must determine the nature of plaintiff's factual claims on the basis of what is actually alleged in the sworn Complaint, based on information and belief. And that Complaint fails to advance any specific allegations about what ASB did *in Kansas* which would support venue here. The Plaintiff supplies no specific factual response to the showing made by Defendants in their motion that, while ASB does have an office in Olathe, Kansas, the key officers (Sweeney and LeGleyt) do not live or regularly work in Kansas. According to Sweeney's affidavit, ASB makes no decision about contracting agents in Kansas, and he has never spoken while in Kansas with any of the Rockford agents.

There is no sworn allegation that any substantial element of the "corporate strategy" was actually undertaken in Kansas. As noted earlier, the Complaint alleges that Derouin's departure was engineered by Hawks, but Hawks has averred that he never travelled to Kansas to solicit the Rockford employees to leave Bankers Life, and that he did not communicate with those persons from Kansas. The Plaintiff in response has made no effort to offer any sworn allegations which would counter the conclusion that all substantial events relating to the dispute occurred outside the State of Kansas. And, as noted earlier, Bankers Life has itself alleged in *Derouin* that the events underlying the departed Rockford agents are centered in Illinois.

In sum, the court finds that Plaintiff has failed to show the existence of acts or omissions in Kansas which have a close connection to its claims. As reflected in its Complaint (rather than as reframed in the Response to the motion to dismiss), the Illinois Plaintiff alleges that its former Illinois agents departed from their Illinois employment, violating their Illinois contracts and misappropriating confidential and trade secret information in Illinois. The Plaintiff has advanced litigation against these agents in Illinois, has offered only the vaguest allegations of Defendants performing any specific act in Kansas, and has offered no response to the Defendants' evidence that they did nothing relevant to the departure of the Rockford agents in Kansas.[4] The court concludes that venue is not appropriate in Kansas.

---

[4] Plaintiff has offered, by a Motion to Supplement (which is granted as unopposed) information relating to a November 9, 2020 Reciprocal Agent Release between James Sweeney and Constantine Darsaklis, which lists Olathe, Kansas as the address for ASB. But this doesn't alter any of the conclusions set forth above – that Olathe may be the nominal address for ASB, but

Because the court reaches this conclusion, it need not address Defendants' alternative argument that the case should be transferred. The court still notes, however, that the if the case were not dismissed, transfer would be the strongly favored result. Bankers Life argues that, of the nine factors potentially relevant to a transfer (see *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991)), several support denial of Defendants' motion:  the plaintiff's choice of forum, the location of witnesses, and the existence of congested court dockets.

The court finds that, of the nine factors, only the first (Bankers Life's choice of Kansas as a venue) supports keeping the action in Kansas. Bankers Life fails to identify any witness who lives in Kansas, and in fact concedes that the key ASB officers involved in the matter (Sweeney, LeGeyt, Hawks, and Venae Jewett) reside outside Kansas. The great majority of the likely witnesses (whether from Bankers Life or its former Rockford agents), all reside in Illinois. The statistics cited by the plaintiff relating to median time from filing to disposition, show there is a slight advantage for Kansas over the Northern District of Illinois, but fail to show that the docket of the latter is so congested it would substantially interfere with the parties's rights and interests.

Given the absence of any relevant evidence or witnesses in Kansas, and the conceded existence of ongoing litigation in Illinois centered on the same conduct, the court would transfer the matter to Illinois if required to decide the issue.

---

the Plaintiff has still never shown any action by ASB *in Kansas* which is substantially material to its claims involving the Rockford agents.

IT IS ACCORDINGLY ORDERED this day of April, 2021, that the Plaintiff's Motion to Supplement (Dkt. 24) is granted; Defendants' Motion to Dimiss (Dkt. 16) is granted.

*J. Thomas Marten*
J. Thomas Marten, Judge